324 S.E.2d 367

**STATE of West Virginia**

v.

**David TAYLOR.**

No. 16085.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1984.

226

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

J. Michael Ranson, Charleston, for appellant.

PER CURIAM:

David Taylor appeals from his conviction in the Circuit Court of Jackson County of four counts of breaking and entering. On October 26, 1982, a Grand Jury returned a five-count indictment charging the appellant with breaking and entering various buildings, other than a dwelling house, in 1980 and 1982, with intent to commit a larceny. He was convicted on four of the counts and sentenced to four concurrent terms of one to fifteen years.[1]

In September of 1982, the police department of Ravenswood, West Virginia conducted an investigation of several burglaries, involving homes and businesses during the preceding two years. Police reports provided to the appellant pursuant to his discovery request, disclosed the following information:

1. The fifth count was dismissed by the trial court. Five years were added to each sentence pursuant to a determination that appellant had been previously convicted of a felony. *W.Va. Code,* 61–11–19 [1945].

On February 1, 1980, entry was gained into Jack's Sports Center by the removal of a piece of plywood from the window of the men's restroom. $120 in coins was taken including $20 from a jar behind the bar and $15, in pennies, from a cigar box.

On March 1, 1982, a breaking & entering occurred at the Checkerboard Restaurant. Five video game machines were pryed open, and approximately $220 in change was taken from the machines and the cash register.

On May 7, 1982, there was a breaking and entering at the Double Nickel Bar. Entry was gained through the rear door. Approximately $270 was taken from a cigarette machine, video games, and a pool table. Doors on all the machines were damaged.

On June 8, 1982, a breaking and entering occurred at J Co Lumber, Inc. Entry was gained by breaking the window in a rear door. Someone used a hack saw and chisel in an unsuccessful attempt to open the safe. The report states: "While cutting the safe someone cut themselves." Approximately $5 was taken, and there was $500 worth of damage to the safe.

During two interrogations conducted on September 20 and 27, 1982, by the Police Chief of Ravenswood (Edward Speece), the appellant confessed to those breaking and enterings. Each confession was preceded by the reading of a statement of rights, consisting of *Miranda* warnings plus the following statements: "5. You have the right to be taken before a magistrate immediately. 6. You can decide at any time to exercise these rights and not answer any questions or make any statements and be taken before a magistrate immediately."

The first time the warnings were given, ·Chief Speece told the appellant that number 5—the right to be taken immediately to a magistrate—did not apply because the appellant was not under arrest, and Speece placed an "x" in front of the number "5." The rights form was read, in its entirety, four more times. On each reading, Speece gave a similar admonition that the appellant did not, under the circumstances, have the right to be taken to a magistrate, and

he placed an "x" next to the number "6." The confessions were reduced to writing, signed by the appellant, and witnessed by Chief Speece and another police officer. At the end of the interrogation, the appellant agreed to help with an investigation of some house burglaries. He was not placed under arrest and was permitted to leave.

The appellant moved for suppression of the confessions on the following grounds (1) the confessions were not voluntarily given; (2) the *Miranda* warnings were defective and confusing; and (3) the appellant should have been taken to a magistrate prior to the interrogation. Following an *in camera* hearing, the trial judge denied the motion to suppress.

At trial, Chief Speece read four confessions to the jury. The State also presented testimony of the owners or employees of the businesses that were broken into.

An acquaintance of the appellant, Kim Grinnan, was called as a witness by the State. She testified that the appellant came to her home three times in 1982, that he had a large quantity of coins with him, and that on one occasion he had a hack saw, screwdriver, hammer and crowbar. In March or April of 1982, the appellant had a tennis racket cover containing more than $200 in coins.

The appellant, for his defense, introduced three police reports in an effort to show differences between the details in appellant's confessions and the facts as they were reported to the police by the victims. Ms. Grinnan and her husband John were the only witnesses called by the appellant. Ms. Grinnan testified that she was questioned by Chief Speece concerning the appellant's whereabouts and that she later tried to contact the appellant to inform him that the police wanted to talk to him. During cross-examination, Mr. Grinnan confirmed that the appellant had about $200 in coins in March or April of 1982.

The appellant contends that it was error not to suppress the confessions. First, the appellant argues that the confession was involuntary in that (1) it was coerced by a threat to invoke the habitual criminal of-

fender statute and imprison the appellant for life; and (2) the police chief offered to talk to the prosecutor about a plea bargain. Chief Speece denied making any threats, and he also testified that he told the appellant, after taking the statements, that the judge might accept a plea of guilty to one charge and allow the others to be dismissed. At the close of the suppression hearing, the court found that the appellant's testimony was not credible and that there was neither intimidation nor coercion in the manner in which the statements were elicited. He further found the appellant to be sophisticated and well educated. For these reasons, the court concluded that the confessions were voluntary. The voluntariness issue was also submitted to the jury with a proper instruction, as requested by the defense.[2]

■ Using the principle that a "trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence," Syl. pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), we find no error on the issue of voluntariness of the confessions.

■ Second, the appellant contends that the confession should have been suppressed because the *Miranda* warnings were defective and confusing.

The trial court found, and we agree, that at the time of the interrogations, the appellant was not under arrest. Therefore, he had no right to be taken to a magistrate. In one of his statements, the appellant says that he understands he is not under arrest and that he is free to leave. His testimony at the suppression hearing reveals that the entire litany of rights was read to him by Chief Speece, who told him that the right to see a magistrate did not apply. An examination of appellant's testimony reveals that he was not confused about the nature and extent of his rights. Under these circumstances, the alteration of the *Miranda* form was not improper.

■ Third, the appellant contends that he was under arrest and should have been taken to a magistrate prior to the interrogations. We reiterate that the trial court found that the appellant was not under arrest, and we find no reason to disturb that finding.

■ The appellant's final contention with regard to the admissibility of the confessions is that two of them (Checkerboard Restaurant and J Co Lumber) were irrelevant because the dates of the offenses which the appellant admitted were different from the dates of the offenses as reported to the police by the victims. Appellant argues that this discrepancy constitutes a material variance between the indictment, as particularized by the police reports, and the evidence offered by the State at trial.

We find no merit in this contention. The State offered the testimony of the victims to establish the dates on which the break-ins occurred. The dates contained in the confession, while differing from other evidence presented, do not render the confessions irrelevant. In addition, we find no error in permitting Chief Speece to testify that he simply misrecorded the dates.

■ We also find no merit in the appellant's contention that his conviction must be reversed because it was based on confessions that were not independently corroborated. Comparison of the trial testimony, the police reports and the confessions leads us to the conclusion that the various sources of material facts were in

---

2. Defense Instruction No. 7 reads as follows:
   The Court instructs the jury that in order to find that David Taylor voluntarily made any confession(s), you must first find that he was told that he had the right to remain silent, that anything he said would be used against him in a Court of law, that he had a right to have a lawyer present during any questioning and that if he could not afford an attorney that one would be appointed for him.

You must also find that David Taylor was told that he had the right to exercise these rights at any time and not answer any questions and that he knowingly and intelligently relinquished these rights.
See Syl. pts. 4 and 5, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).

harmony; that is, the confessions were corroborated independently. There is agreement on the methods of entry and the types of machines that were invaded; there is concurrence on the damage done to the J Co Lumber safe; and there are significant discrepancies as to the amount of money taken.

■ All the evidence, taken together, was sufficient to sustain the conviction.

A conviction in a criminal case is not warranted by the extrajudicial confession of the accused alone. The confession must be corroborated in a material and substantial manner by evidence *aliunde* of the *corpus delicti.* The corroborating evidence, however, need not of itself be conclusive; it is sufficient if, when taken in connection with the confession, the crime is established beyond reasonable doubt.

Syl. pt. 1, *State v. Blackwell,* 102 W.Va. 421, 135 S.E. 393 (1926).

The appellant's final contention is that his conviction should be reversed because the State failed to provide him with photographs taken of the crime scenes; results of laboratory tests of blood found at J Co Lumber; and measurements of a footprint found in the snow near Jack's Sports Center. The State did not introduce any of this evidence.

Prior to trial, the appellant made a demand, pursuant to Rule 16, *W. Va.R. Crim.P.,* for the production of such evidence. He also made general, written and oral requests for disclosure of exculpatory information. The State filed a disclosure prior to trial, but included no blood tests, footprint measurements, or photographs.

It is clear from the record that the appellant and his counsel were aware of footprint and blood evidence. In his testimony before the Grand Jury, Chief Speece said he had found footprints behind Jack's Sports Center and matched them with a type of shoe worn by appellant. The Grand Jury minutes were disclosed to the appellant prior to trial. At the suppression hearing, the appellant testified that Speece informed him about the existence of a lab report on the blood found at J Co Lumber.

Mr. Casto, a salesman at J Co Lumber, and Chief Speece both testified at trial that blood was found on the floor near the safe. On cross-examination of Speece, defense counsel asked whether samples were taken. Speece replied that the blood type was ascertained, but counsel did not pursue the matter further or ask for production of the report identifying the blood type.

It was also during cross-examination that Speece revealed the existence of crime scene photographs and the footprint measurements. At that point, defense counsel demanded that the evidence be produced. After discussion between counsel and the court on whether this evidence was exculpatory or discoverable under Rule 16, the court deferred ordering discovery, stating that the matter would be taken up later. The matter was not thereafter pursued by defense counsel during trial, in the motion for judgment of acquittal at the close of the State's case, or in the motion for a new trial.

■ There was no abuse of discretion by the trial judge in not ordering disclosure, under Rule 16, in light of the State's election not to seek admission of the evidence and the abandonment by defense counsel of the requests for production of the blood tests, photographs, or footprint measurements.

■ Appellant's alternate ground that the evidence was exculpatory is unsupported by the record. The appellant's only argument in this regard is that the State chose not to use the evidence in its prosecution of the appellant, despite the fact that he had been led to believe the blood samples and footprint to be incriminatory. We find this argument unpersuasive. Election by the State not to use evidence against a criminal defendant does not, *ipso facto,* mean that such evidence is exculpatory.

Accordingly, the conviction is affirmed.

Affirmed.